IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RAFIK MOMIN, et al. | : |
| | : |
| | : |
| v. | : Civil Action No. CCB-02-1158 |
| | : |
| | : |
| MAGGIEMOO'S INTERNATIONAL, | : |
| L.L.C. | : |
| | : |
| | : |

**MEMORANDUM**

Pending before this court are defendant MaggieMoo's International, L.L.C.'s ("defendant" or "MaggieMoo's") motion for summary judgment and plaintiffs Rafik and Rozmin Momin's ("plaintiffs" or "Momins") cross-motion for summary judgment.[1] A brief description of the case is as follows.

The Momins desired to operate a MaggieMoo's ice cream shop franchise in The Woodlands, Texas metropolitan area. (Pls.' Opp. Mem. at 1; Def.'s Mem. in Supp. of Summ. J. at Ex. 2, Franchise Agreement (hereinafter "Franchise Agreement")). After some discussion, MaggieMoo's mailed a franchise agreement to the Momins. (Pls.' Opp. Mem. at 2; Def.'s Resp. in Opp. to Pls.' Cross-Mot. for Summ. J. at 2). The Momins made the following

---

[1] Plaintiffs' motion for an extension of the discovery period will be denied. In addition, defendant correctly notes that plaintiffs' reply memorandum in support of their cross-motion for summary judgment, which contains numerous new arguments, was filed sixteen days late. (See Def.'s Mot. to Strike). Without excusing such tardiness, the court nevertheless will consider plaintiffs' reply memorandum and, accordingly, deny defendant's motion to strike.

pertinent changes to the agreement: (1) added language to section 4.1 (located under the subheading, "Fees");[2] (2) added paragraph 7 to Exhibit D (which is entitled "Lease Terms"); and (3) deleted language from section 6.1 of Exhibit E (which is entitled "Site Selection Addendum"). (Pls.' Opp. Mem. at 2, Ex. 1, Aff. of Rafik Momin at ¶ 5; Def.'s Reply Mem. at Ex. 1, Dep. of Rafik S. Momin at 20-40). The purpose of these changes was to require the full refund of the $23,000 initial franchise fee (as opposed to a refund of the initial franchise fee less $5,000) in the event that a suitable site for the franchise could not be retained during the search period. (See id.). Upon making these changes, the Momins executed the franchise agreement and mailed it, along with the $23,000 fee, to MaggieMoo's on December 7, 1999. (Pls.' Opp. Mem. at 2).

MaggieMoo's made one change to the agreement it received from the Momins. In the margin of Exhibit E, section 6.1, MaggieMoo's inserted the language "less five thousand dollars ($5,000)," in accordance with the original draft's provision that MaggieMoo's could retain $5,000 of the initial franchise fee if a suitable site for the franchise could not be secured. (See

---

[2] It appears that the Momins added the phrase "except as provided under paragraph 7, Exhibit D-1" to section 4.1. Paragraph 7 of Exhibit D-1 (which is entitled "Lease Addendum") has nothing to do with the fees described in section 4.1. Presumably, the Momins meant to refer to the paragraph they added to the agreement, paragraph 7 of Exhibit D.

Franchise Agreement at Ex. E). Richard J. Sharoff ("Sharoff"), president and chief executive officer of MaggieMoo's, initialed the handwritten change and executed the franchise agreement on behalf of MaggieMoo's on December 9, 1999. (Id.; Def.'s Mem. in Supp. of Summ. J., Ex. 1, Decl. of Richard J. Sharoff at ¶¶ 3, 7). On December 13, 1999, Sharoff sent the Momins a letter stating, in relevant part:

> Enclosed please find a fully executed copy of your Franchise Agreement. Please keep this document in a secure place for your records. Also note that Paragraph 6.1 on page 3 of Exhibit E has a change that we did not discuss nor agree upon. This paragraph addressed the refund provisions if a suitable site cannot be located; our original Franchise Agreement specifies that **if a refund is made, it will be in the amount of the franchise fee paid less five thousand dollars ($5,000).** (This is consistent with all other areas of the Agreement, including Paragraph 4.1 on page 8.) I have enclosed a corrected copy for you to initial and return. Please use the enclosed self-addressed, stamped envelope to return this page as soon as possible.

(Pls.' Opp. Mem. at Ex. 2, Letter from Sharoff to Momins of 12/13/99) (emphasis in original).[3] Notwithstanding this issue, Sharoff welcomed the Momins "to the MaggieMoo's 'family'" in the letter and enclosed with it several MaggieMoo's T-shirts, a copy of the company's most recent Partner Bulletin, a current

---

[3] While Sharoff apparently did not notice the two other changes to the agreement pertaining to the refund of the initial franchise fee, he certainly was aware that the Momins changed the agreement to require a full refund in the event that a suitable location could not be secured.

organizational chart for the MaggieMoo's Support Center, a letter summarizing the company's Real Estate Criteria, information regarding possible financing sources for the franchise, and a Store Opening Process flowchart. (Id.).

The Momins never initialed MaggieMoo's' change to Exhibit E as Sharoff requested in his December 13, 1999 letter. (Pls.' Opp. Mem. at 3, Ex. 1, Aff. of Rafik Momin at ¶ 7). Nevertheless, the Momins proceeded to search for a site for their franchise. (Def.'s Reply Mem. at Ex. 1, Dep. of Rafik S. Momin, at 40-56; Def.'s Resp. in Opp. to Pls.' Cross-Mot. for Summ. J. at 2). The Momins pursued two sites within The Woodlands, Texas metropolitan area, the Pinecroft Center and the Portofino Center, but did not submit a site approval package for either site to MaggieMoo's. (See Franchise Agreement at Ex. E; Def.'s Reply Mem. at Ex. 1, Dep. of Rafik S. Momin, at 54-55, 64-65).

On January 24, 2000, the Momins telephoned Sharoff and informed him that they wished to terminate the franchise agreement. (Def.'s Reply Mem. at Ex. 1, Dep. of Rafik S. Momin, at 57-58; see also, Pls.' Opp. Mem. at Ex. 4, Letter from Sharoff to Momins of 2/21/00). MaggieMoo's has not refunded any portion of the initial franchise fee. (Pls.' Opp. Mem. at 12).

The Momins filed suit in the District Court of Travis County, Texas, alleging breach of contract, violation of the Texas Deceptive Trade Practices Act, and an equitable cause of

action for money had and received. (See Compl.). MaggieMoo's removed the case to the United States District Court for the Western District of Texas, which then transferred the case to this court.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc., 840 F.2d 236, 240 (4th Cir. 1988). The court must "view the facts and draw reasonable inferences in a light most favorable to the nonmoving party," Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), but it also must abide by its

affirmative obligation to ensure that factually unsupported claims and defenses do not proceed to trial. <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986)).

I. <u>Existence of contract</u>

Plaintiffs first argue that there was no meeting of the minds regarding the terms of Exhibit E, and thus, there was no contract at all. (Pls.' Opp. Mem. at 5-6). Accordingly, plaintiffs contend that quasi-contractual remedies, including those arising from an equitable action for money had and received, are appropriate. (<u>Id.</u> at 6-7, 10-12).

As stated by the Court of Appeals of Maryland, "'When writings alone evidence a contract, it is for the court to construe the writings, and determine whether there was a contract, and, if so, what that contract was.'" <u>Suburban Hosp., Inc. v. Dwiggins</u>, 596 A.2d 1069, 1075 (Md. 1991) (quoting <u>Univ. Nat'l Bank v. Wolfe</u>, 369 A.2d 570, 575 n.7 (Md. 1977)). The Momins made an offer to MaggieMoo's when they executed the franchise agreement, as changed by them, and mailed it to MaggieMoo's for execution. <u>See, e.g.</u>, RESTATEMENT (SECOND) OF CONTRACTS § 24 (2002) (defining offer as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain

is invited and will conclude it"); 1 E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 3.3 (2d ed. 2001) (stating that "[e]mpowerment of the offeree to make the offeror's promise enforceable is thus the essence of an offer"). MaggieMoo's accepted the Momins' offer when Sharoff executed the agreement, as changed by the Momins, even though he was aware that they had changed the agreement to require a full refund in the event that a suitable franchise location could not be secured. See, e.g., RESTATEMENT (SECOND) OF CONTRACTS § 50(1) (defining acceptance of an offer as the "manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer"); 1 E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 3.3 (defining acceptance as "the action (promise or performance) by the offeree that creates a contract (i.e., makes the offeror's promise enforceable)"; see also, Franchise Agreement at § 24.1 (stating that the agreement "takes effect upon its acceptance and execution by Franchisor...").

The conclusion that MaggieMoo's accepted the Momins' offer is not affected by the facts that Sharoff inserted language in the margin of Exhibit E and directed the Momins' attention to this change in his letter dated December 13, 1999. In Stout v. Home Life Ins. Co., 651 F.Supp. 28, 35 (D. Md. 1986), the court held that an acceptance coupled with a request to modify the offer is, nevertheless, a valid acceptance. The Stout court

relied heavily upon the Court of Appeals of Maryland's opinion in <u>Katz v. Pratt St. Realty Co.</u>, 262 A.2d 540 (Md. 1970), which held:

> 'Frequently an offeree, while making a positive acceptance of the offer, also makes a request or suggestion that some addition or modification be made. So long as it is clear that the meaning of the acceptance is positively and unequivocally to accept the offer whether such request is granted or not, a contract is formed.'

<u>Id.</u> at 548 (<u>quoting</u> 1 WILLISTON, CONTRACTS § 79 (3d ed. 1959). <u>See also</u>, RESTATEMENT (SECOND) OF CONTRACTS § 61 (stating that "[a]n acceptance which requests a change or addition to the terms of the offer is not thereby invalidated unless the acceptance is made to depend on an assent to the changed or added terms"). While MaggieMoo's requested that the Momins' offer be modified to permit retention of a portion of the initial franchise fee, it did not condition its acceptance on the Momins' assent to this change. Quite the contrary, Sharoff's letter of December 13, 1999 makes clear that MaggieMoo's unequivocally accepted the offer and considered the Momins to be part of the "MaggieMoo's 'family,'" while merely requesting a modification of the offer. (<u>See</u> Pls.' Opp. Mem. at Ex. 2, Letter from Sharoff to Momins of 12/13/99).

As there was a meeting of the minds on all of the agreement's material terms, the court finds there is a valid contract between the Momins and MaggieMoo's, the terms of which

are those supplied by the Momins in their offer. "'[N]o quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests,'" and accordingly, plaintiffs' claim for money had and received is unavailable as a matter of law. County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc., 747 A.2d 600, 607 (Md. 2000) (quoting Mass Transit Admin. v. Granite Constr. Co., 471 A.2d 1121, 1126 (Md. App. 1984)).

II. Breach of contract

Plaintiffs next contend that if there is a valid contract, MaggieMoo's breached it by failing to refund any portion of the initial franchise fee. (See Pls.' Opp. Mem. at 4-8).[4] Defendant responds that plaintiffs are not entitled to a refund because

---

[4] According to the Momins, paragraph 7 of Exhibit D (which was added to the agreement by them) mandates the automatic, full refund of the franchise fee in the event that a suitable site is not acquired. (Pls.' Opp. Mem. at 4-8). Such an interpretation does not honor the contract as a whole. See, e.g., State Highway Admin. v. David A. Bramble, Inc., 717 A.2d 943, 945 (Md. 1998). Exhibit E (entitled "Site Selection Addendum") contains provisions related to locating a site, submitting materials regarding prospective sites to MaggieMoo's, gaining approval of a site, and receiving a refund in the event that an acceptable site cannot be secured. (See Franchise Agreement, Ex. E). Other provisions in the franchise agreement refer to Exhibit E in connection with such topics. (See id. at §§ 1.1, 4.1, 15.2.1). Contrarily, as explained in section 5.1, Exhibit D (entitled "Lease Terms") articulates the conditions that all acceptable leases must contain. (See id. at § 5.1, Ex. D). Plaintiffs' contention, therefore, that Exhibit D somehow governs the refund of the initial franchise fee is irreconcilable with the contract as a whole.

they neither submitted a written request for a refund nor used their best efforts in locating a suitable site, per section 6.1 of Exhibit E, the Site Selection Addendum. (See Def.'s Mem. in Supp. of Summ. J. at 6-7; Franchise Agreement at Ex. E).

In relevant part, section 6.1 of Exhibit E states that a franchisee is entitled to a refund of the initial franchise fee:

> If Franchisee has used his best efforts to locate a site, as determined by Franchisor, but fails to locate a site during the Search Period, and, within ten (10) days of the expiration of the Search Period, provides Franchisor with written notice of Franchisee's request to (1) terminate all of its rights under the Agreement and this Addendum, and (2) receive a refund of the portion of the initial franchise fee...

(Franchise Agreement at Ex. E, § 6.1). The plain language of this section reveals that written notice and best efforts are express conditions precedent to receiving a refund. See Miller v. Bristol-Myers Squibb Co., 121 F.Supp. 2d. 831, 840 (D. Md. 2000) (stating that, "'A condition precedent is an event, other than mere lapse of time, which, unless excused, must exist or occur before the duty of immediate performance of a promise arises'") (quoting Ritz-Craft Corp. v. Stanford Mgmt. Group, 800 F.Supp. 1312, 1317 n.4 (D. Md. 1992)). As stated by the Miller court, "In Maryland, '[n]o contractual duty arises when there is an unfulfilled condition precedent to a contract.'" 121 F.Supp. 2d at 840 (quoting Pradhan v. Maisel, 338 A.2d 905, 909 (Md. App. 1975)).

Regarding the requirement of written notice, plaintiffs assert that while they admittedly did not give written notice of termination to MaggieMoo's (see Def.'s Reply Mem. at Ex. 1, Dep. of Rafik S. Momin at 57-58), they gave oral notice, which suffices. (Pls.' Opp. Mem. at 7-8). The Court of Special Appeals of Maryland, in B & P Enters. v. Overland Equip. Co., 758 A.2d 1026, 1037-1041 (Md. App. 2000), concluded that a condition precedent requiring written notice may be satisfied by actual notice if the purpose of the written notice was fulfilled by actual notice and if the other party suffered no prejudice from the lack of written notice. See also, Little Beaver Enters. v. Humphreys Rys., Inc., 719 F.2d 75, 79 (4th Cir. 1983). MaggieMoo's does not dispute that it had actual notice of the Momins' desire to terminate the agreement, nor does it allege that it suffered any prejudice from the absence of a writing. Accordingly, the condition precedent requiring written notice was fulfilled by actual notice in this case.

Plaintiffs, however, do not raise any meritorious arguments to support their contention that they used best efforts to locate a site. (See Pls.' Opp. Mem.).[5] "Best efforts is a

---

[5] In fact, the only argument with respect to best efforts advanced by the plaintiffs prior to their tardy reply memorandum (see, supra, n.1) is that two letters from Sharoff to the Momins, wherein Sharoff attempts to resolve the present conflict without litigation, concede defendant's liability, and thus impliedly, that plaintiffs used best efforts. (See Pls.' Opp. Mem. at 13, Ex. 3, Ex. 4). These letters, as offers to compromise, are not

11

standard that has diligence as its essence and is imposed on those contracting parties that have undertaken such performance." 2 E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 7.17c; see also, JKC Holding Co. LLC v. Washington Sports Ventures, Inc., 264 F.3d 459, 466 (4th Cir. 2001) (discussing contractual best efforts obligations).

As stated, the Momins promised to use their best efforts to locate a site in The Woodlands, Texas metropolitan area. (Franchise Agreement at Ex. E, §§ 1, 6.1). Per the Site Selection Addendum, the Momins were obligated to secure an acceptable lease or sublease within 120 days after executing the franchise agreement. (Id. at Ex. E, §§ 1, 3). Section 5.1 of the agreement provided that any lease or sublease must contain the lease terms and conditions stipulated in Exhibit D (entitled "Lease Terms"). (Id. at § 5.1, Ex. D). Paragraph 3 of Exhibit D required that any lease must restrict the use of the premises to the operation of a MaggieMoo's franchise for the duration of the franchise agreement. (Id. at Ex. D, ¶ 3; see also, id. at § 7.4 (reiterating that the premises must be used solely for the operation of a MaggieMoo's franchise)). Per Section 2.1, the

---

admissible to prove defendant's liability or plaintiffs' compliance with the best efforts requirement, although they could be used, for instance, to show that MaggieMoo's had actual notice of the plaintiffs' desire to terminate the franchise agreement. See FED. R. EVID. 408; Ausherman v. Bank of Am. Corp., 212 F.Supp. 2d 435, 453-55 (D. Md. 2002).

12

term of the franchise agreement was to expire at the earlier of ten years from the date of execution or the duration of the franchise's lease or sublease, including lease renewal options. (Id. at § 2.1).

The Momins admittedly pursued only two sites within The Woodlands area, the Pinecroft Center and the Portofino Center. (Def.'s Reply Mem. at Ex. 1, Dep. of Rafik S. Momin at 64-65). The Momins did not sign a lease at the Pinecroft Center because the landlord rejected their proposal for an expanded use clause in the lease, which would have permitted them to use the premises for another type of business at their option. (Id. at 44-49).[6] The negotiations at the Portofino Center did not even proceed to discussions of a lease. (Id. at 52). With that, the Momins telephoned Sharoff on January 24, 2000 to terminate the agreement, forty-eight days after its execution. (Id. at 56-58; see also, Pls.' Opp. Mem. at Ex. 4, Letter from Sharoff to Momins of 2/21/00).

The recited facts, elicited from Rafik Momin's own

---

[6] In their tardy reply memorandum, plaintiffs contend that MaggieMoo's did not object to the inclusion of an expanded use clause in the lease. (Pls.' Reply Mem. at 1-3) (citing Def.'s Reply Mem. at Ex. 1, Dep. of Rafik S. Momin)). Momin's deposition testimony pertaining to this point, however, is equivocal at best. (See, e.g., Def.'s Reply Mem. at Ex. 1, Dep. of Rafik S. Momin at 46 (stating, "I don't know. I don't think they disagreed, though.")). In any event, the plain language of the franchise agreement prohibits an expanded use clause. (See Franchise Agreement at §§ 2.1, 5.1, 7.4, Ex. D).

13

deposition testimony, reveal that plaintiffs did not use diligence or best efforts to locate a site. First, they abandoned the search process just forty-eight days into the search period, defined in the Site Selection Addendum to endure for 120 days after execution. Second, they seriously pursued only one site within the defined territory. And third, the stated sole reason for the Momins' inability to acquire a lease at the Pinecroft Center was their own insistence on an expanded use clause, which was prohibited by the plain language of the franchise agreement. (See Franchise Agreement at §§ 2.1, 5.1, 7.4, Ex. D). The express condition precedent of best efforts contained in section 6.1 of the Site Selection Addendum was not satisfied, and hence, MaggieMoo's is under no contractual duty to refund any portion of the initial franchise fee. (See id. at Ex. E; see also, id. at § 4.1 (providing that the franchise fee is deemed fully earned unless franchisee meets the requirements for a refund as established in the Site Selection Addendum)). Defendant's motion for summary judgment on the breach of contract claim, therefore, will be granted.

III. Texas Deceptive Trade Practices Act

Finally, plaintiffs allege that MaggieMoo's violated the Texas Deceptive Trade Practices Act ("DTPA"). (See Pls.' Opp. Mem. at 8-10). To have standing to sue under the DTPA, "First

14

the claimant must have purchased goods or services, and secondly, the goods must form the basis of the complaint." Americom Distrib. Corp. v. ACS Communications, Inc., 990 F.2d 223, 227 (5th Cir. 1993), cert. denied, 510 U.S. 867 (1993).  In Americom, the Fifth Circuit held that a complaint based on the suspension of a distributorship, as opposed to one based on the quality of goods or services provided by the supplier, does not state a claim under the DTPA.  Id.  See also, Brittan Communications Int'l Corp. v. Southwestern Bell Tel. Co., No. 01-41450, 2002 WL 31680818, at *5-6 (5th Cir. Dec. 16, 2002) (holding that a claim based on the suspension of services does not fall under the DTPA); Footloose, Inc. v. Stride Rite Children's Group, Inc., 923 F.Supp. 114, 115-117 (N.D. Tex. 1995) (ruling that a plaintiff whose claim is based on the discontinuance of a sales relationship, rather than on the fault of any goods, does not have standing under the DTPA).

Similarly, the Momins' complaint is based on the termination of their relationship with MaggieMoo's, and not on the quality of goods or services provided by MaggieMoo's.  (See Pls.' Opp. Mem.).  Plaintiffs' claim under the DTPA, therefore, is unavailable as a matter of law.

A separate Order follows.

_____January 7, 2003_____          _____/s/_____
Date                                    Catherine C. Blake
                                        United States District Judge